**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| TODD D'BRAUNSTEIN, Conservator over Steven D'Braunstein and his Estate, | No. 22-55237 |
| | D.C. No. 8:19-cv-01553-JVS-KES |
| *Plaintiff-Appellant*, | |
| v. | |
| | OPINION |
| CALIFORNIA HIGHWAY PATROL; SAMANTHA DIAZ-DURAZO, California Highway Patrol Officer; DOES, 1 through 100, inclusive, | |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted June 26, 2024
Seattle, Washington

Filed March 12, 2025

Before: Kenneth K. Lee, Daniel A. Bress, and Salvador
Mendoza, Jr., Circuit Judges.

Opinion by Judge Bress;
Partial Dissent by Judge Lee

# SUMMARY[*]

## Qualified Immunity/Medical Care

The panel reversed the district court's summary judgment for California Highway Patrol Officer Samantha Diaz-Durazo on qualified immunity grounds in Steven D'Braunstein's 42 U.S.C. § 1983 action alleging that he was denied adequate medical care.

D'Braunstein was involved in a serious single-vehicle accident. Durazo arrived at the scene of the accident and found D'Braunstein disoriented and in physical distress. She did not call medical personnel. Instead, roughly 45 minutes after arriving on the scene, she arrested him after deciding he was on drugs and took him to jail. When a nurse at the jail refused to admit D'Braunstein due to his medical condition, Durazo transported him to the hospital. It turned out that D'Braunstein had suffered a stroke.

The Fourth and Fourteenth Amendments require state actors to provide adequate medical care in certain circumstances when the government confines a person or otherwise restricts his liberty. The key question in assessing an alleged violation is whether the officer's provision (or deprivation) of medical care was objectively unreasonable.

Construing the facts in the light most favorable to D'Braunstein, a reasonable jury could find that Durazo violated D'Braunstein's constitutional rights by failing to

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

summon prompt medical care, considering the serious nature of the collision and his evident symptoms of distress. A jury could find that Durazo's apparent belief that D'Braunstein did not need medical attention was based on an unreasonable mistake of fact or judgment. If that is true, Durazo's failure to summon prompt medical care was a violation of clearly established law, which provides that officers must seek to provide an injured detainee or arrestee with objectively reasonable medical care in the face of medical necessity creating a substantial and obvious risk of serious harm, including by summoning medical assistance.

Dissenting in part, Judge Lee agreed with the majority that a jury could find a constitutional violation. But Durazo was entitled to qualified immunity because there was no clearly established law requiring her to call for emergency medical help when there were no obvious and clear signs of an urgent medical necessity.

**COUNSEL**

Stuart B. Esner (argued) and Kathleen J. Becket, Esner Chang Boyer & Murphy, Pasadena, California; Luis A. Carrillo, Michael S. Carrillo, and J. Miguel Flores, Carrillo Law Firm LLP, Pasadena, California; for Plaintiff-Appellant.

Nathan G. Guttman (argued), Deputy Attorney General; Rob Bonta, California Attorney General; Office of the California Attorney General, Los Angeles, California; Vickie P. Whitney, Deputy Attorney General; Catherine Woodbridge, Supervising Deputy Attorney General; Office of the California Attorney General, Sacramento, California; Danielle F. O'Bannon, Senior Assistant Attorney General,

Office of the California Attorney General, Oakland, California; for Defendants-Appellees.

---

**OPINION**

BRESS, Circuit Judge:

Steven D'Braunstein was involved in a serious single-vehicle accident, his car destroyed. The highway patrol officer who arrived at the crash found D'Braunstein disoriented and in physical distress. But the officer never called for medical assistance. Instead, roughly 45 minutes after arriving on the scene, she arrested D'Braunstein after deciding he was on drugs. It turns out D'Braunstein had suffered a stroke. The officer did not take D'Braunstein to the hospital until hours later, and it is alleged that the delay in securing medical treatment led to D'Braunstein suffering permanent injuries. The district court held that the officer was entitled to qualified immunity. We reverse and remand for further proceedings.

I

A

In reviewing the grant of summary judgment, we recount the facts in the light most favorable to D'Braunstein, the non-moving party. *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011).

Around 4:50 p.m. on June 1, 2018, Officer Samantha Diaz-Durazo (Durazo) of the California Highway Patrol (CHP) received a call about a traffic collision on a freeway onramp in Costa Mesa, California. She arrived at the scene

at approximately 5:00 p.m.  A black Audi had collided with a concrete wall.  The car was totaled.  It had a crushed hood and major front and side damage, and the steering wheel airbag had deployed.  Photographs of the car suggest a near head-on collision with the wall.  Standing next to the car was 55-year-old Steven D'Braunstein.

D'Braunstein told Durazo that he had been driving the car at about 20 miles per hour and that he "[d]idn't know what happened" and "[t]he car did something."  Durazo observed D'Braunstein exhibiting dry mouth, slurred speech, profuse sweating, confusion, poor balance, slow reaction time, and constricted pupils.  In speaking with Durazo, D'Braunstein made multiple spontaneous and incoherent statements.  Durazo further noticed that D'Braunstein had difficulty answering basic questions, including where he was going and what had caused the collision.  Eventually, D'Braunstein asked to sit down due to his difficulty maintaining balance.

Officer Durazo did not call for an ambulance.  Instead, she began to evaluate whether D'Braunstein was under the influence of alcohol or drugs.  D'Braunstein said he had not consumed either.  Durazo did not smell alcohol on D'Braunstein's breath or find physical signs of drug use, and a later search of D'Braunstein's Audi did not uncover any.

Durazo administered a series of field sobriety tests on D'Braunstein, but he was unable to perform them as directed.  After conducting various of these tests, Durazo told D'Braunstein: "You got a serious condition.  You're not leaving."  Durazo also administered a Breathalyzer test, which revealed a 0.00 blood alcohol level.  The parties dispute whether D'Braunstein denied needing medical care,

having any medical issues, or needing to take any medication.

Although she is not a drug recognition expert and did not call one of the CHP's drug recognition experts to the scene, Durazo formed the opinion that D'Braunstein was on drugs. Durazo still did not summon paramedics for D'Braunstein. Instead, at approximately 5:44 p.m., around an hour after the crash and 45 minutes after Durazo arrived on the scene, Durazo placed D'Braunstein in handcuffs and arrested him for driving a vehicle under the influence of drugs. Cal. Veh. Code § 23152(f). Durazo then transported D'Braunstein to the Orange County jail.

Durazo and D'Braunstein arrived at the jail around 6:30 p.m., with D'Braunstein's symptoms persisting during the drive. At the jail, a nurse examined D'Braunstein and found he had high blood pressure. The nurse denied D'Braunstein admittance to the jail and directed that he be taken to the hospital. Around 8:20 p.m., approximately two hours after they had arrived at the jail, Durazo drove D'Braunstein to the Orange County Global Medical Center, without using her siren or flashing lights. D'Braunstein was admitted to the hospital at approximately 8:40 p.m., over three and a half hours after Durazo first encountered him.

At the hospital, D'Braunstein was diagnosed with a stroke. Officer Durazo remained at the hospital with D'Braunstein until approximately 10:00 p.m., around which time she officially released D'Braunstein from police custody.

D'Braunstein's delay in receiving medical treatment is a key issue in this case. It is alleged that the delay prevented doctors from providing D'Braunstein intravenous tissue plasminogen activator (TPA) treatment, which would have

mitigated the stroke's effects, because this treatment must be administered within a certain number of hours after the onset of stroke symptoms. D'Braunstein also contends more generally that his delay in receiving medical treatment led him to suffer greater lasting damage from the stroke. For her part, Durazo maintains that D'Braunstein's delay in receiving medical care did not affect his ability to receive TPA treatment because D'Braunstein began experiencing stroke symptoms the night before, meaning the TPA treatment would have been unavailable to him anyway.

It appears based on medical records that D'Braunstein remained hospitalized for several weeks. D'Braunstein is now unable to care for himself and lives in a long-term residential care facility. D'Braunstein has suffered brain damage and other injuries from the stroke.

## B

D'Braunstein filed this lawsuit under 42 U.S.C. § 1983 in California state court against the CHP and Durazo.[1] Todd D'Braunstein, next of kin, was substituted as plaintiff due to D'Braunstein's incapacity. After the case was removed to federal court, the district court eventually granted summary judgment for Durazo.

Although D'Braunstein raised a few different theories, the only one before us concerns the deprivation of medical care. Analyzing the claim under the Fourth Amendment, the district court explained that case law "require[d] law enforcement officers to provide objectively reasonable post-arrest medical care to an arrestee," and that "Durazo failed to provide reasonable medical care to S. D'Braunstein in violation of the Fourth Amendment." In the district court's

---

[1] We will refer to the defendants collectively as "Durazo."

view, Durazo had made "a grievous mistake of fact," because a reasonable officer encountering the collision damage and someone with D'Braunstein's symptoms "should have summoned medical assistance."

The district court nevertheless granted summary judgment for Officer Durazo because, in the court's view, the constitutional violation was not clearly established. The court reasoned that unlike the other cases in this area, D'Braunstein "was not injured while being apprehended, but rather, his injury was sustained prior to his arrest in an event unrelated to his arrest." The court also concluded that although Durazo had violated D'Braunstein's constitutional rights, the violation was not "obvious" given D'Braunstein's symptoms. Having rejected D'Braunstein's federal claims, the court declined supplemental jurisdiction over his state law claims.

D'Braunstein timely appealed. We initially held this case for the en banc decision in *J.K.J. v. City of San Diego*, No. 20-55622. *See J.K.J. v. City of San Diego*, 42 F.4th 990 (9th Cir. 2022), *vacated*, 59 F.4th 1327 (9th Cir. 2023). When the parties in *J.K.J.* informed the court that they had settled, we lifted our stay and heard oral argument. We review the district court's grant of summary judgment on qualified immunity grounds de novo. *Garcia*, 639 F.3d at 1208.

## II

The doctrine of qualified immunity protects police officers from liability under § 1983 "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664

(2012)). We hold that construing the facts in the light most favorable to D'Braunstein, a reasonable jury could find that Officer Durazo violated D'Braunstein's constitutional rights by failing to summon him prompt medical care, considering the serious nature of the collision and his evident symptoms of distress. We further hold that a jury could find that Durazo's apparent belief that D'Braunstein was not in need of medical attention was based on an unreasonable mistake of fact or judgment. If that is true, Durazo's failure to summon prompt medical care was a violation of clearly established law, disentitling her to qualified immunity.

## A

We first consider whether there has been a violation of a constitutional right. We agree with the district court that, construing the facts in D'Braunstein's favor, a jury could find a constitutional violation.

The Constitution has been interpreted to require state actors to provide adequate medical care in certain circumstances when the government is confining a person or otherwise restricting his liberty. *See County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989))). For persons convicted of a criminal offense and imprisoned, the right is sourced to the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021). In the case of pretrial detainees who have not been convicted of a criminal offense, the right is sourced to the Fourteenth Amendment. *See Bell*

*v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Sandoval*, 985 F.3d at 669. We have also said that for persons who are detained by police in the course of an arrest, the Fourth Amendment's prohibition on the use of excessive force protects against the deprivation of necessary medical care. *See Tatum v. City & Cnty. of S.F.*, 441 F.3d 1090, 1098–99 (9th Cir. 2006). This explains why the district court analyzed D'Braunstein's medical care claim under the Fourth Amendment.

Under the Fourth and Fourteenth Amendments, the standards both turn on objective reasonableness. As we explained in *Tatum*, what is required under the Fourth Amendment is "objectively reasonable post-arrest care," which means that police officers must "seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital." *Id.* at 1099 (quoting *Maddox v. City of L.A.*, 792 F.2d 1408, 1415 (9th Cir. 1986)). But this does not "require an officer to provide what hindsight reveals to be the most effective medical care for an arrested suspect." *Id.* at 1098. Thus, in *Tatum*, we held that officers who promptly requested an ambulance for an arrestee, but who did not perform CPR on him, acted in an objectively reasonable manner. *Id.* at 1099.

Fourteenth Amendment claims are analyzed similarly. In the Fourteenth Amendment context, our case law instructs that "an objective standard applies to constitutional claims of inadequate medical care brought by pretrial detainees." *Sandoval*, 985 F.3d at 662 (citing *Gordon v. County of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018)). The standard is one of "objective deliberate indifference" in the face of a "substantial risk" of the plaintiff "suffering serious

harm." *Gordon*, 888 F.3d at 1125. Thus, the common underlying constitutional question reflected in Fourth and Fourteenth Amendment case law is whether an officer's provision (or deprivation) of medical care was objectively unreasonable. Our Fourteenth Amendment precedents bear on our analysis here and form part of the body of law on which officers and courts may reasonably rely.

In this case, Durazo encountered D'Braunstein soon after he was involved in a major collision that destroyed his car and caused the airbag to deploy. D'Braunstein was disoriented, sweating profusely, had poor balance, his pupils were constricted, and his speech was slurred and extremely slow. He had difficulty answering standard questions and could not perform the field sobriety tests as directed. Durazo herself told D'Braunstein at the scene that he had "a serious condition." And yet for reasons that are difficult to understand, Durazo did not call medical personnel to the site of the crash. She instead took D'Braunstein to jail. And she did not bring D'Braunstein to the hospital until hours later, and, even then, not until a nurse at the jail refused to admit D'Braunstein due to his medical condition.

We agree with the district court that, construing the facts in the light most favorable to D'Braunstein, a reasonable jury could find that Durazo's failure to summon prompt medical treatment for D'Braunstein was objectively unreasonable, and that Durazo acted with reckless disregard for D'Braunstein's safety and well-being. Given the serious nature of the accident and D'Braunstein's symptoms, a jury could conclude that D'Braunstein faced a "substantial risk of serious harm" due to a "serious medical need," such that a failure to summon prompt medical attention "could result in further significant injury." *Russell v. Lumitap*, 31 F.4th 729, 739 (9th Cir. 2022) (quoting *Peralta v. Dillard*, 744 F.3d

1076, 1086 (9th Cir. 2014) (en banc)).  A jury could find that a reasonable officer in Durazo's position would have called for medical support.  That is, a jury could find that "a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of [Durazo's] conduct obvious." *Gordon*, 888 F.3d at 1125.

This is not a situation in which Durazo made some efforts to secure timely medical care and we are being asked to evaluate whether the choice of one action over another was constitutionally sufficient.  *Cf. Tatum*, 441 F.3d at 1098–99; *see also City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 245 (1983) ("Whatever the standard may be, [the defendant] fulfilled its constitutional obligation by seeing that [the arrestee] was taken promptly to a hospital that provided the treatment necessary for his injury.").  Here, Durazo did nothing to secure medical aid for D'Braunstein for several hours, even though she testified that her CHP training taught her to contact emergency medical personnel if there has been a serious traffic collision.

A jury could thus find that D'Braunstein presented with a substantial risk of serious harm and that Durazo did not "promptly summon[] the necessary medical help or . . . tak[e] the injured [D'Braunstein] to a hospital" in an objectively reasonable manner.  *Tatum*, 441 F.3d at 1099 (quoting *Maddox*, 792 F.2d at 1415); *see also, e.g.*, *Sandoval*, 985 F.3d at 670 ("[A] jury could conclude that a reasonable nurse who was told that Sandoval was shaking, tired, and disoriented—and who was specifically directed by a deputy to evaluate Sandoval 'more thoroughly'—would have understood that Sandoval faced a substantial risk of suffering serious harm." (quotation omitted)); *Lolli v. County of Orange*, 351 F.3d 410, 419–420 (9th Cir. 2003).

To the extent Durazo argues that she did not secure medical treatment because D'Braunstein said it was unnecessary, this turns on disputed facts and raises additional questions about the objective reasonableness of Durazo's decision not to seek prompt medical care.

Durazo's subjective belief that D'Braunstein was on drugs does not change matters. Durazo knew there was no physical evidence of drug or alcohol use. But regardless, Durazo's subjective belief about possible drug use does not alter the fact that D'Braunstein had just emerged from a violent car crash and was exhibiting physical and cognitive abnormalities. The reason for the crash did not change the need for emergency medical evaluation. We therefore hold that a jury could find that Officer Durazo did not provide D'Braunstein with objectively reasonable medical care when she did not attempt to arrange any treatment for hours after D'Braunstein was involved in a serious vehicle accident and showed signs of distress.

Like the district court, we reject Durazo's argument that there is no genuine dispute of material fact as to causation, i.e., that Durazo's delay in securing medical care did not cause D'Braunstein's more serious stroke-related injuries. D'Braunstein's primary theory of the case is that Durazo's delay made D'Braunstein ineligible for TPA treatment, which worsened the effects of his stroke. Durazo responds that D'Braunstein was already ineligible for TPA treatment because his stroke manifested the night before. As the district court explained, however, the nature of D'Braunstein's symptoms the night before is genuinely disputed, as is how D'Braunstein's condition might have improved had he been taken to a hospital sooner. This dispute over causation is a matter for a jury to decide. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)

("[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

## B

We next consider whether the constitutional violation was clearly established. A right is "clearly established" when it is "'sufficiently clear 'that every reasonable official would have understood that what he is doing violates that right.'" *Reichle*, 566 U.S. at 664 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (brackets omitted)). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 741). "This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Wesby*, 583 U.S. at 63 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In this case, it is clearly established that officers must seek to provide an injured detainee or arrestee with objectively reasonable medical care in the face of medical necessity creating a substantial and obvious risk of serious harm, including by summoning medical assistance. *See, e.g.*, *Russell*, 31 F.4th at 738–39; *Sandoval*, 985 F.3d at 662; *Gordon*, 888 F.3d at 1124–25; *Tatum*, 441 F.3d at 1098–99. Officers may not act with objective deliberate indifference to such a medical need. Any reasonable officer would appreciate this well-established obligation. Durazo nevertheless claims she is entitled to qualified immunity for two main reasons.

First, Durazo maintains that the cases in this area only establish the need to provide objectively reasonable medical care when it is the officer's conduct during the arrest that causes the injury warranting immediate medical attention. It

does not appear this was Durazo's reason at the time for not summoning medical care for D'Braunstein. In any event, we reject this argument. Our law has never limited the Fourth and Fourteenth Amendment duties to provide prompt and necessary medical care to those situations in which the medical necessity was occasioned by the officer's own use of force. Instead, we have made clear that this duty exists even if the detainee's injury arose from some other cause. This is not an open legal question.

In *Tatum*, for example, the arrestee was suffering from cocaine intoxication that was no fault of the officers, but we did not doubt that the officers still had a duty to "promptly summon[] the necessary medical care." 441 F.3d at 1099; *see also, e.g.*, *Otis v. Demarasse*, 886 F.3d 639, 645–46 (7th Cir. 2018) (holding that the plaintiff stated a Fourth Amendment claim against the arresting officer who delayed in securing plaintiff medical care for her uterine bleeding). Similarly, in *Sandoval*, a Fourteenth Amendment case, we held that nurses at a jail were not entitled to qualified immunity when they failed to summon paramedics for an inmate who was experiencing a methamphetamine overdose. 985 F.3d at 679. In *Russell*, we likewise held that jail medical personnel were not entitled to qualified immunity because a jury could find them deliberately indifferent for their inadequate treatment of an inmate experiencing an aortic rupture not caused by any official at the jail. 31 F.4th at 735, 743–45. Indeed, there are many Fourteenth Amendment cases finding a constitutional violation or denying qualified immunity when law enforcement officers or jail personnel failed to provide objectively reasonable medical care to persons whose serious injuries were not caused by the officer defendants. *See, e.g.*, *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1244–45 (9th Cir.

2010), *overruled in part on other grounds by Castro v. County of L. A.*, 833 F.3d 1060 (9th Cir. 2016); *Lolli*, 351 F.3d at 419–20; *Gordon v. County of Orange*, 6 F.4th 961, 970–72 (9th Cir. 2021).

This brings us to Durazo's second argument, which is that there is no case law that would have put Durazo on notice, in the specific circumstances she confronted, of the duty to summon prompt medical care. This argument is misplaced. In the context of a § 1983 claim about the failure to summon timely medical attention, case law cannot tell us whether a certain set of facts suggests a legitimate medical emergency. That is not a question of decisional law, but one of factual perception and on-the-ground judgment. *See Russell*, 31 F.4th at 741 (affirming the denial of qualified immunity to certain defendants and noting that "we need not point to cases dealing with the specific type of cardiac symptoms Russell displayed").

This does not mean qualified immunity is never available to those who make these kinds of determinations in error. We readily agree that "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

But if the law is otherwise clearly established, an officer is not entitled to qualified immunity for a mistake of fact or judgment that is itself unreasonable. "Not all errors in perception or judgment . . . are reasonable." *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011). And "[t]hough we may excuse the reasonable officer for such a mistake, it sometimes proves necessary for a jury to

determine first whether the mistake was, in fact, reasonable." *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1168 (9th Cir. 2013) (citation omitted). That is because "[a]n unreasonable mistake of fact does not provide the basis for qualified immunity." *Demuth v. County of L.A.*, 798 F.3d 837, 839 (9th Cir. 2015) (citing *Liberal v. Estrada*, 632 F.3d 1064, 1078 (9th Cir. 2011)).

To the extent Officer Durazo is arguing that she reasonably believed D'Braunstein did not require medical attention, we have already explained that a jury could find her perception of the facts not only wrong, but objectively unreasonable. Under these circumstances, to assess whether Durazo is entitled to qualified immunity under the second prong of the analysis, "we assume she 'correctly perceived all of the relevant facts' and ask whether an officer could have reasonably believed at the time" that her actions were "lawful under the circumstances." *Torres*, 648 F.3d at 1127 (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)). That is, we presume the officer correctly perceived all the relevant facts of which she could have reasonably been aware (we do not presume clairvoyance) and ask if any reasonable officer in those circumstances would understand that what she was doing (or not doing) was unlawful.

Durazo's assertion under the second prong of the qualified immunity inquiry thus boils down to the claim that there is no past case with facts close enough to this one. The argument does not work here. It is of course true that we may not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 583 U.S. at 64–64 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)). At the same time, for purposes of qualified immunity's

"clearly established" prong, there "does not have to be 'a case directly on point.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 741). And to be clearly established, there is no requirement that "the very action in question has previously been held unlawful." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Here, as we have discussed, there is a clearly established duty to provide an arrestee or detainee with objectively reasonable medical care in the face of a serious medical need creating a substantial and obvious risk of harm, including by calling for medical assistance. *See, e.g.*, *Russell*, 31 F.4th at 738–39; *Sandoval*, 985 F.3d at 662; *Gordon*, 888 F.3d at 1124–25; *Tatum*, 441 F.3d at 1098–99. Indeed, we have already treated this principle as clearly established. *See, e.g.*, *Russell*, 31 F.4th at 738–39. It is true that our prior cases may not have involved car accidents or stroke victims. But that degree of specificity is not required. As we recently explained in a case affirming the denial of qualified immunity for failure to furnish adequate medical care, "[i]t is not necessary to have a case involving a heart attack, a case involving appendicitis, or a case involving bowel obstruction for a § 1983 claim based on one of those conditions to survive qualified immunity." *Id.* at 737–38. And as we discussed above, whether a certain situation (here, a serious car crash) coupled with certain symptoms (here, physical and mental disorientation and distress) created a medical emergency is a question of factual impression, not one answered by case law.

The question of clearly established law would be different if Durazo had made some efforts to secure medical care for D'Braunstein and the argument was that her actions were still insufficient. That would require an examination of the proper scope of the legal obligation. The problem for

Durazo is that she did nothing for hours. Her efforts to summon medical care cannot be described as "prompt[]." *Tatum*, 441 F.3d at 1099. Nor can it be argued that the circumstances here so defied common experience as to place this case outside of the clearly established law requiring objectively reasonable medical care in cases of serious medical necessity. It does not require unusual foresight to appreciate that someone who has been in a major car accident and is exhibiting signs of distress and disorientation may need prompt medical attention. On these facts, a jury could so conclude.

Our fine dissenting colleague therefore misperceives this case. The issue is not, as the dissent writes, whether Durazo properly "distinguish[ed] between symptoms" of a stroke or drug use, but whether she properly distinguished between whether the situation called for prompt medical attention or not. Construing the facts in the light most favorable to D'Braunstein, a reasonable jury could find that following a major car accident, D'Braunstein—in Durazo's own words—was suffering from a "serious condition," which presented a substantial risk of serious harm. We do not "demand" that officers make "difficult medical decisions," as the dissent claims. This case instead involves an officer's basic failure to summon any prompt medical care for someone who had emerged from a major vehicle accident and was exhibiting obvious signs of physical distress and disorientation. Nothing in our decision today imposes any greater obligation—an obligation that the law already clearly imposed if the jury finds the facts in D'Braunstein's favor.

\*       \*       \*

The judgment of the district court is reversed, and the matter is remanded for further proceedings. The district

court should likewise resume consideration of the state law claims over which it declined supplemental jurisdiction.

**REVERSED AND REMANDED.**

---

LEE, Circuit Judge, dissenting in part.

This is a tragic case. California Highway Police Officer Samantha Diaz-Durazo thought that Todd D'Braunstein was under the influence of drugs when he crashed his car into a wall. She noticed profuse sweating, slurred speech, constricted pupils, and other common symptoms of drug use. In fact, he had suffered a stroke, though he did not show the typical symptoms, such as facial sagging or paralysis on one side of the body. In retrospect, Officer Durazo should have called medical assistance immediately rather than take him to jail. And D'Braunstein suffered tremendously because of that mistake.

But Officer Durazo is not a doctor or a nurse. There were no visible signs requiring emergency medical help—profuse bleeding, broken bones, labored breathing, or unconsciousness. Instead, she saw signs suggesting drug use and missed that some of those symptoms could also reflect a stroke. At the time, there was no clearly established law requiring an officer to distinguish between symptoms and then call for emergency medical assistance when there are no obvious signs of a major physical injury. We ask too much from law enforcement officers if we demand that they make difficult medical decisions at crime scenes or accidents. I thus respectfully dissent from the majority's decision denying qualified immunity.

* * * *

D'Braunstein crashed his car into a concrete wall. When Officer Durazo arrived, Braunstein was standing outside his car and provided his driver's license. But all was not well. He appeared confused at times, did not know how he crashed his car, and later asked to sit down because of trouble balancing himself.  Officer Durazo noticed dry mouth, slurred speech, profuse sweating, poor balance, and constricted pupils.  Based on her training and experience as an officer, she believed that he was under the influence of drugs.

Officer Durazo knew of the more common signs of a stroke—paralysis in one side of the body, sagging facial muscles, numbness in limbs, and lack of consciousness. Because she did not see any of these symptoms, she mistakenly concluded that he was under the influence.  She did not appreciate that some symptoms of drug use (such as confusion and poor balance) could also signify a stroke.  She thus did not call the paramedics and instead drove him to Orange County jail, where he was examined by a nurse.  He was later diagnosed with a stroke at a hospital.

* * * * *

I agree with the majority that a jury could find a constitutional violation, construing the facts in D'Braunstein's favor at summary judgment.  But I depart from the majority in its "clearly established' prong analysis of qualified immunity.  To prevail in a Section 1983 lawsuit, a plaintiff must show that (1) a government official "violated a federal statutory or constitutional right, and (2) the unlawfulness of [the] conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62–63

(2018) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

A right is "clearly established" when it is "sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'" *Reichle*, 566 U.S. at 664  (alteration in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  Put another way, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*  This means that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."*D.C. v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986))..

I do not believe that it was clearly established that an officer must distinguish between various symptoms and then call for emergency medical help when there are no outward signs of a serious medical injury.  At a general level, I agree that officers must provide reasonable medical care, including calling for emergency help if necessary.  For example, if an officer encounters someone who has deep lacerations or has trouble breathing, that officer must provide adequate medical care, such as summoning paramedics.  That is what happened in *Tatum v. City and Cty. of San Francisco*, the key case cited by D'Braunstein.  441 F.3d 1090 (9th Cir. 2006).  The officers there called for medical help after noticing that Tatum struggled to breathe.  *Id.* at 1093.

In contrast here, Officer Durazo saw no signs of a medical emergency.  D'Braunstein was standing—with no major bleeding or any other visible physical injuries.  True, he appeared confused at times, had slurred speech, and was sweating significantly.  But these are common symptoms of drug use.  They also may be linked to a stroke, though

D'Braunstein did not have the most obvious indications of a stroke (*e.g.*, sagging face, partial paralysis).  Faced with these conflicting medical symptoms, Officer Durazo made the wrong decision.  But qualified immunity protects "all but the plainly incompetent." *Wesby*, 583 U.S. at 63.  And I cannot say Officer Durazo was plainly incompetent, even if her mistake ended with severe consequences for D'Braunstein.

None of the cases cited by the majority opinion are factually analogous to ours.  In *Russell v. Lumitap*, a detainee repeatedly complained of deep pains in his chest and said his pain was "10 out of 10." 31 F.4th 729, 733–36 (9th Cir. 2022). But the nurses only offered a Motrin and instructed him on "relaxation techniques," while the doctor never bothered to physically examine him.  *Id.* at 735.  He later died of a ruptured aorta, and his family sued the doctor and two nurses.  *Id.* at 742.  That is a far cry from our case.  Similarly, *Sandoval v. Cnty. of San Diego* involved nurses who did not monitor a detainee for eight hours, even though the deputies noticed drug withdrawal symptoms and asked the nurses to observe him closely.  985 F.3d 657, 662-63 (9th Cir. 2021).  Moreover, the "team leader" nurse in *Sandoval* refused to call an ambulance even when officers asked her to do so.  *Id.* at 664.  In  contrast here, Officer Durazo did not have medical training or fail to summon medical attention when told to do so.  Finally, in *Gordon v. Cnty, of Orange*, the nurse and the deputies knew that Gordon had a 3-grams-a-day heroin habit and were advised that "Gordon required medical attention" but they allegedly did not adequately monitor him.  888 F.3d 1118, 1121 (9th Cir. 2018).  By comparison, Officer Durazo knew nothing of D'Braunstein's medical history that would indicate a risk of stroke or a need for greater medical attention.

Ultimately, the majority opinion relies on the general principle that a law enforcement officer must provide reasonable medical care. True enough. But for qualified immunity, the Supreme Court "has repeatedly told courts . . . not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *al-Kidd*, 563 at 742). The facts here are tragic, but I believe qualified immunity applies because there was no clearly established law requiring Officer Durazo to call for emergency medical help when there were no obvious and clear signs of an urgent medical necessity.

I thus respectfully dissent.