**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

MAY 12 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SHAWN R. PORIO, | No. 25-1294 |
| Plaintiff - Appellant, | D.C. No. 8:22-cv-00812-RGK-ADS |
| v. | MEMORANDUM* |
| RN YVETTE BARBARI, Orange County Nurses, | |
| Defendant - Appellee, | |
| and | |
| CITY OF TUSTIN, ORANGE COUNTY FIRE AUTHORITY, COUNTY OF ORANGE, Officer IRINEO FLORES, No. 1392, Officer E. URIAS, No. 1324, Officer CHRISTOPHER PETERSON, No. 1359, Officer HAYDEN NEWMAN, No. 1341, Officer MICHAEL WAGNER, No. 1313, BRENT PARDOEN, OCFA No. 6933, DAVID PHELAN, OCFA No. 6828, JOSEPH WINGERT, Jr., OCFA No. 6959, TED HWANG, OCFA No. 6959, RN JENNIFER MAYA, Orange County Nurses, DOES 1-10, | |
| Defendants. | |

---

&ast; This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted April 20, 2026
Pasadena, California

Before: FRIEDLAND and MILLER, Circuit Judges, and VITALIANO, District Judge.[**]

Plaintiff Shawn Porio brought 42 U.S.C. § 1983 claims against Orange County ("the County") and Yvette Barbari after he was arrested on suspicion of driving under the influence of alcohol, when his erratic driving was actually caused by a stroke.[1] The jail intake medical screening conducted by Barbari, a nurse employed by the County, failed to identify that Porio was experiencing a medical emergency, and he was admitted to the jail. Porio was in custody for over 20 hours before County jail staff sent him to the hospital. During that time, he experienced at least one more stroke. Porio alleges that, as a result of the delay in treatment, he suffered permanent brain damage from the strokes.

The district court granted summary judgment to the County, and the claim against Barbari proceeded to trial. A first trial ended in a mistrial, with an evenly

---

[**] The Honorable Eric N. Vitaliano, United States District Judge for the Eastern District of New York, sitting by designation.

[1] Porio's First Amended Complaint originally included claims against other defendants and an ADA claim. Those claims were dismissed and are not at issue in this appeal.

divided jury. The second trial ended in a verdict for Barbari.

Porio appeals the district court's grant of summary judgment to the County, and the post-trial judgment for Barbari. He challenges some evidentiary rulings as well as the three hour per side time limit on the examination of witnesses that the district court imposed during the second trial against Barbari.

"We review the district court's grant of summary judgment de novo." *Sandoval v. County of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021). "A district court's evidentiary rulings are reviewed for an abuse of discretion and will not be reversed 'unless the ruling is manifestly erroneous.'" *Sidibe v. Sutter Health*, 103 F.4th 675, 691 (9th Cir. 2024) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997)). We review "issues relating to the management of trial for an abuse of discretion." *Gen. Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500, 1507 (9th Cir. 1995).

1. The district court granted summary judgment to the County, reasoning that Porio's First Amended Complaint ("FAC") had not put the County on notice that he intended to pursue liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), based on the County's policies and practices related to jail or nursing staff. But Porio's FAC included statements that satisfy the pleading requirements for a claim under *Monell*. *See* Fed. R. Civ. P.

8(a)(2); *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993).

Porio's FAC alleged that the County and its correctional healthcare authority[2] "fail[ed] to use lawful and appropriate policies, practices, and procedures for arrestees and detainees who exhibit signs of mental[] impairment that might be the result of a pathology such as a stroke rather than inebriation," and that they "acted with deliberate indifference, and in conscious and reckless disregard to the . . . constitutional and statutory rights of Plaintiff . . . including the right to prompt and adequate medical screening and attention." The FAC also "allege[d] that other policies, practices and customs as may be established through discovery, are also the moving force or proximate cause of [his] constitutional deprivations, including but not limited to, express authorization, ratification, failure to train and failure to supervise." During discovery, Porio requested that the County "identify all policies, training memoranda and bulletins, department orders and all other documents and writings through which Orange County and Orange County Sheriff's Department seek to inform custody and medical personnel about how they medically evaluate a jail inmate or respond to an apparent inmate medical emergency." Also, in response to an interrogatory from the County, Porio

---

[2] The relevant allegations in the FAC are about "entity defendants," which is defined to include the County and the Orange County Health Care Agency—the agency that provides medical services to people in custody in Orange County.

noted that because the County had failed to provide any training records in response to his request, he had concluded that "the County provided no such training" and that "the County failed to train its intake nurses on how to . . . handle arrestees with altered mental status, make decisions on when to summon a medical provider . . . [or] screen arrestees who have communication problems or are unable to answer questions (including due to intoxication or other conditions)." Porio's interrogatory response also alleged that the County was on actual and constructive notice of the training deficiencies. Collectively, this was enough to put the County on notice that Porio intended to pursue a *Monell* claim based on its policies, practices, and training related to medical screenings and referrals by jail staff and nurses. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (holding that, to pursue an alternative theory of recovery at summary judgment, the plaintiffs must either plead the theory in their complaint or "make known during discovery their intention to pursue recovery on" the theory omitted from their complaint).

Porio also presented enough evidence to create a genuine issue of material fact as to that *Monell* claim, including: (1) evidence that the County had notice of policy and training deficiencies regarding medical handling of arrestees and detainees due to prior in-custody deaths and watchdog reports but took no remedial action, (2) the County's failure to identify in discovery any training on the medical

evaluation of jail admittees or for responding to medical emergencies, (3) expert testimony that it is a "common, recurrent scenario" for patients with serious health problems, including strokes, to arrive at intake having been misidentified by law enforcement as being intoxicated, and opining that patients who are thought to be so intoxicated that they cannot answer questions "require[] immediate [provider] assessment to address the substantial risk they are experiencing a medical emergency" (which the County's policy did not require), (4) expert testimony that if Porio "had been properly referred to a physician or mid-level provider, . . . his obvious neurological deficits would have been identified and not incorrectly attributed to alcohol intoxication."

2. Porio argues that the district court abused its discretion by enforcing a strict three-hour-per-side time limit to present the case, thereby affecting his substantial rights. "[A] district court may impose reasonable time limits on a trial," but we generally "look upon rigid hour limits for trials with disfavor." *Gen. Signal Corp.*, 66 F.3d at 1508.

In the context of this case, which presented difficult medical diagnosis, causation, and damages questions requiring expert testimony, three hours to examine witnesses was not enough for Porio to present his case. Because the time limit caused him to rush the presentation of evidence to the jury and therefore

impeded his ability to meet his burden of proof, it was prejudicial to Porio, and the jury verdict cannot stand.

3. Barbari argues that she is entitled to qualified immunity, which would prevent a retrial. Even assuming that Barbari preserved her qualified immunity defense, it fails on the merits. "[I]t is clearly established that officers must seek to provide an injured detainee or arrestee with objectively reasonable medical care in the face of medical necessity creating a substantial and obvious risk of serious harm, including by summoning medical assistance." *D'Braunstein v. Cal. Highway Patrol*, 131 F.4th 764, 771 (9th Cir. 2025). Construing the facts in the light most favorable to Porio, a reasonable jury could find that Barbari's failure to refer Porio to a provider was objectively unreasonable and that Barbari acted with reckless disregard for Porio's well-being, in violation of the Fourteenth Amendment. *See id.* at 769-70. Because a reasonable jury could find that Barbari violated Porio's rights, and because the right was clearly established, Barbari is not entitled to qualified immunity.

**REVERSED and REMANDED.**