NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUN 2 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ESTATE OF BRANDON TRANBERG-
HOADLEY, by and through his successors
in interest, Melanie Tranberg and Mark
Hoadley; MELANIE TRANBERG; MARK
HOADLEY,

        Plaintiffs - Appellees,

 v.

CITY OF GARDENA,

        Defendant - Appellant,

GARDENA POLICE DEPARTMENT,
LOS ANGELES COUNTY SHERIFF'S
DEPARTMENT, ROCIO MARTIN-LEAL,
AKA Doe 9, DOES, 1 through 5, 10,
COUNTY OF LOS ANGELES, VICTOR
SALDANA, AKA Doe 6, MICHAEL
SPINOSA, AKA Doe 7, GUILLERMO
TINOCO, AKA Doe 8,

        Defendants.

No. 24-6832

D.C. No.
2:22-cv-02334-FWS-AS

MEMORANDUM*

ESTATE OF BRANDON TRANBERG-
HOADLEY; MELANIE TRANBERG;
MARK HOADLEY,

No. 24-6835

---

    *    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Plaintiffs - Appellees,

v.

ROCIO MARTIN-LEAL, AKA Doe 9,

Defendant - Appellant,

CITY OF GARDENA, VICTOR SALDANA, AKA Doe 6, MICHAEL SPINOSA, AKA Doe 7, GUILLERMO TINOCO, AKA Doe 8, GARDENA POLICE DEPARTMENT, COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, DOES, 1 through 5, 10,

Defendants.

Appeal from the United States District Court
for the Central District of California
Fred W. Slaughter, District Judge, Presiding

Argued and Submitted April 24, 2026
Pasadena, California

Before: FRIEDLAND and MILLER, Circuit Judges, and TRAUM, District Judge;[**]
Dissent by Judge Traum.

This § 1983 action arises from the suicide of Brandon Tranberg-Hoadley while he was detained at a city jail. Tranberg-Hoadley's parents and his estate (collectively, "Plaintiffs") allege that Defendant Rocio Martin-Leal was

---

[**]    The Honorable Anne R. Traum, United States District Judge for the District of Nevada, sitting by designation.

deliberately indifferent to Tranberg-Hoadley's risk of suicide in violation of the Fourteenth Amendment. Plaintiffs further allege that Martin-Leal is liable for wrongful death under state law and that Defendant City of Gardena (the "City") is vicariously liable for wrongful death.

Martin-Leal appeals the district court's denial of summary judgment on qualified immunity. Both Defendants appeal the denial of Martin-Leal's statutory defense under California Government Code § 845.6 to Plaintiffs' wrongful death claim, and the City appeals the denial of summary judgment on the merits of the wrongful death claim. Reviewing de novo, *Moore v. Garnand*, 83 F.4th 743, 749 (9th Cir. 2023), we reverse the district court's denial of qualified immunity and dismiss the remainder of Defendants' appeal.

1. We have jurisdiction to review Martin-Leal's appeal of the district court's denial of qualified immunity. Where, as here, an interlocutory appeal "raises purely legal questions . . . such as whether [the officer's] alleged conduct violated clearly established law," we have jurisdiction to "review those issues" under the collateral order doctrine. *Est. of Anderson v. Marsh*, 985 F.3d 726, 731 (9th Cir. 2021). In doing so, we must "assum[e] the facts as alleged by [plaintiffs] to be true." *Moore*, 83 F.4th at 748 (citation modified).

By contrast, we lack jurisdiction to review Defendants' appeal of the district court's denial of summary judgment on the state law issues because that denial is

not an appealable collateral order. With respect to Defendants' § 845.6 defense, "[f]or claims of immunity under state law, the availability of an interlocutory appeal depends on whether, under *state* law, the immunity functions as an immunity from suit or only as a defense to liability." *Hampton v. California*, 83 F.4th 754, 771-72 (9th Cir. 2023) (citation modified). Section 845.6 is part of the California Government Claims Act. We have held "that the Government Claims Act immunities . . . are defenses to liability, not immunities from suit." *Id.* at 772-73. Accordingly, Defendants "cannot invoke the collateral order doctrine to immediately appeal the district court's rejection of [their] state law defense[]." *Id.* at 773.

Nor does pendent jurisdiction provide a basis to review the state law issues. We may exercise pendent jurisdiction over "an otherwise non-appealable ruling" when the ruling is "inextricably intertwined with an order properly before us." *Williams v. City of Sparks*, 112 F.4th 635, 646 (9th Cir. 2024) (citation modified). As explained, the only order properly before us is the denial of qualified immunity. But the qualified immunity issue is not intertwined with the merits of the wrongful death claim or Defendants' § 845.6 defense. Those state law issues turn on whether Martin-Leal acted negligently, whereas the qualified immunity inquiry turns on whether the law applicable to Martin-Leal's conduct was clearly established.

2. With respect to Plaintiffs' federal claims, we conclude that Martin-Leal is entitled to qualified immunity. "Government officials enjoy qualified immunity from suit under § 1983 unless their conduct violates clearly established law." *Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (per curiam). "To find that a right is clearly established, courts generally need to identify a case where an officer acting under similar circumstances was held to have violated the Constitution." *Id.* (citation modified). In the context of jail-suicide cases specifically, we have held that it is "critical whether our case law had, at the time of the events in [question], sufficiently clarified when a detainee's imminent risk of suicide was substantial enough to require immediate attention." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 600 (9th Cir. 2019).

That standard is not met here. We have denied qualified immunity to officers in several cases for alleged deliberate indifference to detainees' risk of suicide or other latent medical needs, but even taking Plaintiffs' version of events as true, those cases "do not at all resemble this case." *Id.* at 601; *see Conn v. City of Reno*, 572 F.3d 1047, 1052, 1062 (9th Cir. 2009) (denying qualified immunity to officers who took no action after witnessing a suicidal detainee attempt to strangle herself); *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1237-39, 1244-45 (9th Cir. 2010) (denying qualified immunity to a mental health specialist who removed a detainee from suicide watch despite being advised by another mental-

5                                                    24-6832

health specialist that he was "truly suicidal" and had repeatedly attempted suicide);[1] *Sandoval v. County of San Diego*, 985 F.3d 657, 662–64, 670 (9th Cir. 2021) (denying qualified immunity to jail's nurses who were aware of a detainee's medical risk but left him unmonitored in a medical observation cell "for nearly eight hours" and failed to timely summon emergency care after they discovered him seizing).[2]

By contrast, Martin-Leal received vague and inconsistent information regarding Tranberg-Hoadley's risk of suicide. In the course of bringing Tranberg-Hoadley to his cell, the arresting officer informed Martin-Leal that Tranberg-Hoadley's "girlfriend said that [Tranberg-Hoadley has] had suicidal thoughts" and that "the girlfriend also said that he has a past of tryin[g] to hurt himself," but at the same time, the officer relayed to Martin-Leal that Tranberg-Hoadley "said he was not suicidal and that the deputies [who initially interviewed him] had said he was not suicidal after [they] ask[ed] [him]." Tranberg-Hoadley then committed

---

[1] Both *Conn* and *Clouthier* were overruled on other grounds by *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (en banc).

[2] We reject Plaintiffs' alternative argument that Martin-Leal violated Tranberg-Hoadley's constitutional rights by failing to complete the jail's medical screening forms in accordance with the jail's policies. *See Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (explaining that "there is no § 1983 liability for violating prison policy" (citation modified)); *cf. Taylor v. Barkes*, 575 U.S. 822, 826 (2015) (per curiam) (explaining that there is no recognized "right to the proper implementation of adequate suicide prevention protocols").

suicide minutes after they placed him in his cell.  Our cases could not have placed Martin-Leal on notice that "a reasonable officer, knowing what [Martin-Leal] knew, would have understood that failing to check on [Tranberg-Hoadley] immediately after" placing him in his cell "presented such a substantial risk of harm to [Tranberg-Hoadley] that the failure to act was unconstitutional." *Horton*, 915 F.3d at 600.

      **REVERSED** in part; **DISMISSED** in part.  The parties shall bear their own costs on appeal.

*Estate of Tranberg-Hoadley v. City of Gardena*, 24-6832

Traum, A., dissenting:

I respectfully disagree with my colleagues on the issue of qualified immunity because Officer Martin-Leal knew that Tranberg-Hoadley presented a risk of imminent suicide when she left him in a remote cell and then failed to check on him for 48 minutes. A reasonable officer in her position would have understood that risk "presented such a substantial risk of harm [to the detainee] that the failure to act was unconstitutional." *Horton ex rel. Horton v. City of Santa Maria*, 915 F.3d 592, 600 (9th Cir 2019); *Sandoval v. Cnty of San Diego*, 985 F.3d 657, 678 (9th Cir. 2021) (quoting *Horton*, 915 F.3d at 600).

Viewing the facts in the light most favorable to Tranberg-Hoadley, as we must on a motion for summary judgment, the record supports an inference that Martin-Leal knew that Tranberg-Hoadley was suicidal before she left him in a remote cell at "the back of the jail and outside of [her] observation." Martin-Leal was present when Tranberg-Hoadley said he was on methadone, "'already depressed as hell,'" "going through withdrawals" from heroin, having trouble breathing, and said his withdrawals "would only get worse." Officer Victor Saldana, the arresting officer, accompanied Martin-Leal and Tranberg-Hoadley to the remote cell. Saldana told Martin-Leal "[a]t least three times" that Tranberg-

Hoadley was a suicide risk—on the way to the remote cell, at the cell, and after they left Tranberg-Hoadley there.

A reasonable officer would have understood, and Martin-Leal herself acknowledged, that Tranberg-Hoadley's risk of suicide was imminent. When, at the cell, Saldana asked, "[d]o you want him in a jumpsuit?" Martin-Leal answered, "[n]o, he can hang himself with that." This shows that Martin-Leal perceived the risk of suicide to be imminent *before* she left him in the cell. Minutes later in her office, Martin-Leal confirmed that "because of the past suicide attempts," Tranberg-Hoadley would be a "county run," meaning he would need to be transferred to the county jail for more intensive medical attention. Any reasonable officer would have concluded, as did Martin-Leal, that Tranberg-Hoadley was at risk of killing himself at any minute.

These facts make this case different from *Horton*. The officer in *Horton* did not know the detainee was suicidal when he arrested, booked, and then placed him in a cell. 15 F.3d at 597-598. The officer then called the detainee's mother, who told him her son had been suicidal two weeks earlier and may still be. *Id.* at 597-598. After the call, the officer turned to paperwork to transfer the detainee instead of immediately checking on him. *Id.* at 598. The detainee hanged himself during the call and the officer checked on him some 12-15 minutes after the call. *Id.* at 598 n.5. The plaintiff in *Horton* did not argue that leaving the detainee in the cell in

2

the first instance was unconstitutional, nor could they have. That is the issue here because Martin-Leal knew that Tranberg-Hoadley was imminently suicidal when she left him at the cell and, despite knowing this, walked away, busied herself with other matters, and then failed to return for 48 minutes.

Neither *Horton* nor this Court's precedents support qualified immunity here. "It is clearly established that the Eighth Amendment protects against deliberate indifference to a detainee's serious risk of suicide." *Conn v. City of Reno*, 572 F.3d 1047, 1062 (2009). Though *Horton* did not fit that rule, this case does. The absence of an identical case on point is not fatal because an officer is not entitled to qualified immunity "simply because 'the very action in question has not previously been held unlawful.'" *Sandoval*, 985 F.3d at 680 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *D'Braunstein v. California Highway Patrol*, 131 F.4th 764, 773 (9th Cir. 2025) (same). While qualified immunity may be a closer call if the officer "made some efforts" to address the medical risk at hand, *D'Braunstein*, 131 F.4th at 773, the officer is not entitled to immunity when they "did nothing," *id.,* or their efforts were "almost non-existent." *Sandoval*, 985 F.3d at 679. Because a reasonable officer in Martin-Leal's position would have understood that leaving Tranberg-Hoadley alone and unobserved in a remote cell for 48 minutes was unconstitutional, I would affirm the district court's denial of qualified immunity.

3